**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| KATIE VOSS AND JAMIE VOSS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:25-cv-02074-DAE |
| AMERIHOME MORTGAGE COMPANY, LLC; | § | |
| INVESTOR NEST PROPERTIES; NATHANIEL CURIEL, Individually; | § | |
| SERVICEMAC, LLC; AND DOES 1 THROUGH 15, INCLUSIVE, | § | |
| | § | |
| *Defendants.* | § | |

JURY TRIAL DEMANDED

**PLAINTIFFS' FIRST AMENDED PETITION**

Plaintiffs Katie Voss and Jamie Voss ("Plaintiffs"), appearing pro se, file this First Amended Petition against Defendants AmeriHome Mortgage Company, LLC ("AmeriHome"); ServiceMac, LLC ("ServiceMac"); Investor Nest Properties, LLC ("Investor Nest"); Nathaniel Curiel, individually ("Curiel"); and Does 1 through 15, and allege as follows:

**I. PARTIES**

1. Plaintiff Katie Voss is an individual residing at PO Box 272, Kempner, Texas 76539. At all relevant times, Plaintiff Katie Voss was an owner of the real property located at 210 W. Avenue F, Jarrell, Texas 76537 (the "Property").

2. Plaintiff Jamie Voss is an individual residing at 210 W. Avenue F, Jarrell, Texas 76537. At all relevant times, Plaintiff Jamie Voss was an owner of the Property.

3. Defendant AmeriHome Mortgage Company, LLC is a Delaware limited liability company doing business as a mortgage servicer and lender in Texas. AmeriHome is the mortgage servicer of record for Plaintiffs' loan and is the entity that executed the loan modification agreement at issue. AmeriHome has appeared through counsel Nelson Mullins Riley & Scarborough LLP.

4. Defendant ServiceMac, LLC is a limited liability company doing business as a mortgage subservicer in Texas. ServiceMac acts as subservicer for AmeriHome with respect to Plaintiffs' loan and handles day-to-day account servicing, payment processing, and fee assessment. ServiceMac removed this action to federal court on December 18, 2025 and has appeared through counsel Nelson Mullins Riley & Scarborough LLP.

5. Defendant Investor Nest Properties, LLC is an Illinois limited liability company with a last known address of 520 W. 26th Street, Chicago, Illinois 60616. Investor Nest entered into a Purchase Contract with Plaintiffs dated January 28-29, 2025 for the Property. Investor Nest was served by certified mail on December 2, 2025 in the state court action and on March 11, 2026 with the federal summons. Investor Nest has failed to appear and the Clerk entered default against Investor Nest on May 18, 2026 (ECF No. 39).

6. Defendant Nathaniel Curiel is an individual who, at all relevant times, acted as the principal, agent, and alter ego of Investor Nest Properties, LLC. Curiel personally negotiated the purchase

contract, personally recorded the Notice of Interest, and personally made the threatening communications at issue. Curiel is sued individually based on his personal conduct and on alter ego and veil-piercing theories as set forth herein.

7. Does 1 through 15 are persons or entities whose true names and capacities are currently unknown to Plaintiffs. Plaintiffs will amend this petition to identify Does 1 through 15 when their identities are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each Doe defendant is in some manner responsible for the conduct alleged herein.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship). Plaintiffs are citizens of Texas. Defendants are citizens of Delaware, Illinois, and other states. The amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has jurisdiction over Plaintiffs' federal RESPA claims pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Property that is the subject of this action is located in Williamson County, Texas, within the Austin Division of the Western District of Texas. All or substantially all of the events giving rise to Plaintiffs' claims occurred in this District.

10. This action was originally filed in the 395th Judicial District Court of Williamson County, Texas as Cause No. 25-3359-C395 on November 19, 2025. ServiceMac removed the action to this Court on December 18, 2025.

### III. FACTUAL BACKGROUND

**A. The Property and the Loan**

11. Plaintiffs are the owners of real property located at 210 W. Avenue F, Jarrell, Texas 76537, legally described as S3857 — Jarrell Town Of, Block 39, Lot 1-12, Acres 0.96, Parcel No. R012340 (the "Property").

12. Plaintiffs obtained a mortgage loan secured by the Property. The original deed of trust and note were executed at or around the time of purchase. The original interest rate on the loan was 4.625 percent per annum.

13. Plaintiffs are informed and believe, and on that basis allege, that the beneficial owner of the note is Deutsche Bank National Trust Company, as trustee for a mortgage-backed securities trust. The identity of the actual noteholder was not disclosed to Plaintiffs in connection with the loan modification discussed below. Plaintiffs reserve all rights with respect to claims arising from the lack of disclosure of the noteholder's identity. Additionally, AmeriHome's records reflect a second loan account (Loan No. 0122966112) associated with the Property, for which AmeriHome identified the owner and assignee as Government National Mortgage Association (Ginnie Mae). Plaintiffs are informed and believe that AmeriHome's servicing of two separate loan accounts associated with the Property constitutes a material discrepancy that Plaintiffs intend to investigate in discovery, as it bears directly on the true identity of the noteholder, the authority to modify the loan, and the authority to pursue foreclosure remedies.

**B. The COVID-19 Hardship and Loss Mitigation**

14. Plaintiffs experienced a documented financial hardship due to the COVID-19 pandemic. In August 2022, Plaintiffs submitted a formal hardship letter to AmeriHome requesting loss mitigation assistance, including a loan modification. Plaintiffs cooperated fully with AmeriHome's loss mitigation process, providing all requested documentation in a timely manner.

15. AmeriHome and ServiceMac, as servicer and subservicer, were at all times subject to the loss mitigation requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R. Part 1024 ("Reg X"), including the dual-tracking prohibitions of 12 C.F.R. § 1024.41.

**C. The Loan Modification and Its Defects**

16. AmeriHome offered Plaintiffs a loan modification. The modification materially and adversely altered the terms of Plaintiffs' loan by increasing the interest rate from 4.625 percent to 7.25 percent per annum — an increase of more than 260 basis points — and by capitalizing additional fees and charges into the principal balance. The first modified payment was due September 1, 2025.

17. Plaintiffs are informed and believe, and on that basis allege, that AmeriHome did not fully and accurately disclose the material terms of the modification, including the true cost of the rate increase over the life of the loan, the capitalized amounts, and the identity of the beneficial owner whose consent was required for modification. Had Plaintiffs been fully informed, they would not have executed the modification on the terms offered.

**D. Dual-Tracking — Foreclosure During Active Loss Mitigation**

18. Notwithstanding the executed loan modification, ServiceMac's account statement dated August 18, 2025 — received by Plaintiffs in the ordinary course — reflects foreclosure-related charges assessed on or about July 29, 2025. These charges were assessed before the first modified payment was due on September 1, 2025. No default under the modification agreement had occurred as of July 29, 2025.

19. The assessment of foreclosure charges before a default had occurred under the modification agreement constitutes dual-tracking in violation of Regulation X, 12 C.F.R. § 1024.41, which prohibits servicers from pursuing foreclosure while a complete loss mitigation application is pending and while a borrower is in compliance with a loss mitigation agreement.

20. The HUD Office of Inspector General conducted audits of AmeriHome's parent organization's loss mitigation practices, including Audit Reports 2022-KC-0001 and 2023-KC-0005, which document systemic deficiencies in dual-tracking compliance directly relevant to the conduct alleged herein. Plaintiffs will supplement this allegation with specific audit findings upon completion of document review.

21. AmeriHome's dual-tracking conduct continued during the pendency of this litigation. On February 7, 2026 and February 21, 2026, AmeriHome communicated to Plaintiffs that their loss mitigation application was still actively being processed — while simultaneously opposing Plaintiffs' motions in this Court. This pattern of representing active loss mitigation review while pursuing litigation and foreclosure is the precise dual-tracking conduct prohibited by Reg X.

22. AmeriHome filed and then voluntarily dismissed a prior foreclosure action against Plaintiffs in Case No. 1:25-cv-01030-DAE (voluntarily dismissed October 2025). The voluntary dismissal of that action while simultaneously maintaining Plaintiffs in a loss mitigation process created an irreconcilable inconsistency that Defendants are judicially estopped from now disputing.

**E. Investor Nest Properties — The Title Cloud Scheme**

23. In January 2025, while Plaintiffs were experiencing financial distress arising in material part from AmeriHome and ServiceMac's servicing misconduct, Investor Nest Properties, LLC, by and through Nathaniel Curiel, approached Plaintiffs with an offer to purchase the Property.

24. On January 28-29, 2025, Plaintiffs and Investor Nest executed a Purchase Contract for Real Estate (the "Contract"). The Contract provided for a purchase price of $330,000, an earnest money deposit of $330, and a closing within 45 business days. The Property was to be sold AS IS.

25. Section 15 of the Contract granted Investor Nest a limited and specific power of attorney for one purpose only: to list and market the Property on MLS and related platforms for the purpose of marketing and selling the Property. This authority was expressly limited to marketing activities and did not extend to any other purpose.

26. Section 16 of the Contract authorized Investor Nest to record a Memorandum of Contract for the purpose of memorializing the contract in the Official Registry of Deeds. The authorization to

record the Memorandum was limited to its stated purpose — recording evidence of the contract — and did not authorize use of the recorded instrument as a coercive tool.

27. On February 11, 2025, Nathaniel Curiel caused a Notice of Interest to be recorded in Williamson County, Texas against Parcel No. R012340 (the "Notice of Interest"). The Notice of Interest was notarized on February 11, 2025 by Julia S. Coulibaly, a notary public in Philadelphia, Pennsylvania, Commission No. 1305358.

28. On the same day the Notice of Interest was recorded — February 11, 2025 — Nathaniel Curiel sent text messages to Plaintiffs explicitly stating that Plaintiffs' title was clouded and could not be sold to anyone else but Investor Nest, and that the title would remain clouded to ensure there was no other buyer. On February 12, 2025, Curiel followed up with additional threats that Plaintiffs could not sell, lease, or refinance the Property, that any legal challenge would take a year, and that Plaintiffs would bear all legal fees on both sides.

29. Curiel's own text messages establish that the Notice of Interest was not recorded to memorialize a good-faith contract — it was recorded as a coercive instrument to trap Plaintiffs in the transaction and eliminate any competing offers. This exceeded the limited authority granted in Sections 15 and 16 of the Contract and constitutes an independent tortious act.

30. Following Curiel's threats, Investor Nest demanded a reduction in the purchase price from $330,000 to approximately $285,000-$290,000 — a reduction of approximately $40,000-$45,000 — conditioned on release of the title cloud. These demands were made while Plaintiffs

were simultaneously under financial pressure from AmeriHome and ServiceMac's servicing misconduct.

31. On July 17, 2025, both Plaintiffs executed notarized Revocations of Power of Attorney, revoking all authority previously granted to Investor Nest Properties in the Contract, including the attorney-in-fact authority of Section 15. The Revocations were notarized by Shawna Wimberley, a notary public in Bell County, Texas.

32. On August 7, 2025, Plaintiffs formally notified the Williamson County District Clerk in writing of the revocation of all authority granted to Investor Nest, requesting that the Clerk's office note the revocation and flag any attempted filings by Investor Nest.

33. Despite the revocations of July 17, 2025 and the county notification of August 7, 2025, the Notice of Interest recorded by Investor Nest remains of record in Williamson County against Plaintiffs' Property as of the date of this filing. Investor Nest has taken no action to release or remove the cloud on title. The continued maintenance of the recorded Notice of Interest after revocation of all authority constitutes ongoing wrongful conduct.

**F. Alter Ego — Nathaniel Curiel**

34. Investor Nest Properties, LLC was used by Nathaniel Curiel as a personal instrument to threaten and coerce Plaintiffs. All relevant communications regarding the title cloud threats were made by Curiel personally. All relevant decisions — to record the Notice of Interest, to demand price reductions, to threaten permanent title clouding — were made by Curiel personally. On information and belief, Investor Nest Properties, LLC was at all relevant times inadequately

capitalized, its corporate formalities were not observed, and the corporate form was used for the fraudulent purpose of coercing a below-market sale from financially distressed homeowners. Curiel is individually liable as the alter ego of Investor Nest.

## G. Civil Conspiracy

35. Plaintiffs allege, on information and belief, that the conduct of AmeriHome, ServiceMac, and Investor Nest/Curiel was part of a coordinated scheme — or alternatively, that the defendants acted in a manner that had the combined effect of a coordinated scheme — to strip equity from Plaintiffs' Property through (a) mortgage servicing misconduct that created financial pressure and vulnerability; and (b) predatory below-market acquisition through coercive title clouding during the period of financial distress. The timing of Investor Nest's approach in January 2025, simultaneous with AmeriHome's modification process, and the continuation of foreclosure pressure after the modification, supports the inference of coordination. Plaintiffs will further develop this allegation in discovery.

## H. Additional Clouds on Title

36. Plaintiffs are further informed and believe that additional instruments affecting title to the Property have been recorded by other parties in Williamson County, Texas. Plaintiffs are currently investigating the full extent of clouds on title, including instruments recorded by Chase Bank, N.A. and its predecessors or successors in interest. Plaintiffs reserve the right to seek leave to further amend this Petition to add additional defendants and claims arising from those instruments upon completion of their investigation.

# IV. CAUSES OF ACTION

**COUNT ONE: Breach of Contract (Deed of Trust) — Against AmeriHome and ServiceMac**

37. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

38. The deed of trust securing Plaintiffs' loan constitutes a valid and enforceable contract between Plaintiffs and the holder of the note. AmeriHome and ServiceMac, as servicers, are bound by the terms of the deed of trust in their servicing conduct.

39. Section 22 of the deed of trust requires that before the lender may accelerate the loan or pursue foreclosure remedies, the lender must provide written notice to the borrower specifying: (a) the default; (b) the action required to cure; (c) a date — not less than 30 days from the notice — by which the default must be cured; and (d) that failure to cure may result in acceleration and foreclosure.

40. AmeriHome and ServiceMac breached the deed of trust by assessing foreclosure-related charges before any default under the modification agreement had occurred, by pursuing foreclosure proceedings without providing the Section 22 notice required as a condition precedent, and by maintaining dual-tracking conduct in violation of the loss mitigation provisions incorporated into the deed of trust through RESPA compliance obligations. Specifically: AmeriHome assessed foreclosure fees on July 29, 2025 — 33 days before the first modified payment was due on September 1, 2025. AmeriHome did not issue a Notice of Default and Intent to Accelerate until October 28, 2025, with a cure deadline of December 8, 2025. The foreclosure charges preceded the required Section 22 notice by 91 days, demonstrating that

AmeriHome initiated foreclosure proceedings before any default had occurred and before it had satisfied the contractual conditions precedent to foreclosure.

41. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages including but not limited to improper fees capitalized into their principal balance, damage to their credit, emotional distress, loss of the ability to sell or refinance the Property, and the costs of this litigation.

**COUNT TWO: Violations of RESPA/Regulation X — Against AmeriHome and ServiceMac**

42. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

43. RESPA, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. Part 1024, impose obligations on mortgage servicers in connection with loss mitigation. Section 1024.41 prohibits dual-tracking — the practice of pursuing foreclosure while simultaneously processing a loss mitigation application or while a borrower is in compliance with a loss mitigation agreement.

44. AmeriHome and ServiceMac violated 12 C.F.R. § 1024.41 by: (a) assessing foreclosure charges on July 29, 2025, before the first modified payment was due on September 1, 2025, in violation of the prohibition against foreclosure activity during an active loss mitigation agreement; (b) continuing to represent active loss mitigation processing in February 2026 while simultaneously pursuing litigation to obtain judgment on the pleadings; and (c) failing to respond in good faith to Plaintiffs' written Notices of Error under 12 C.F.R. § 1024.35.

45. The pattern of dual-tracking conduct described herein is consistent with systemic deficiencies in AmeriHome's loss mitigation compliance documented in HUD Office of Inspector General Audit Reports 2022-KC-0001 and 2023-KC-0005.

46. Plaintiffs are entitled to actual damages, statutory damages up to $2,000 per violation, costs, and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f).

**COUNT THREE: Fraud and Fraudulent Inducement — Against AmeriHome**

47. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

48. AmeriHome made material representations to Plaintiffs in connection with the loan modification, including representations regarding the terms of the modification, its effect on Plaintiffs' loan balance, and the identity and authority of the parties involved.

49. AmeriHome failed to disclose material facts including: the true identity of the beneficial owner of the note; the full cost of the interest rate increase from 4.625% to 7.25% over the life of the loan; the amounts being capitalized into the principal balance; and the basis for the rate increase in light of prevailing market conditions.

50. AmeriHome's representations were false or misleading, made with knowledge of their falsity or with reckless disregard for their truth, and made for the purpose of inducing Plaintiffs to execute the modification agreement.

51. Plaintiffs reasonably relied on AmeriHome's representations in executing the modification and suffered damages as a direct result, including an increased interest rate, an increased principal balance, and ongoing financial hardship.

**COUNT FOUR: Breach of Purchase Contract — Against Investor Nest and Curiel**

52. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

53. The Purchase Contract executed January 28-29, 2025 constitutes a valid and enforceable agreement. Plaintiffs performed their obligations under the Contract.

54. Investor Nest and Curiel breached the Contract by: (a) using the attorney-in-fact authority of Section 15 for purposes beyond its limited scope — specifically, using the recorded Notice of Interest as a coercive tool rather than a marketing instrument; (b) imposing conditions on closing inconsistent with the AS IS sale terms; (c) demanding post-contract price reductions through coercive title cloud threats rather than through good-faith renegotiation; and (d) failing to release the Notice of Interest following Plaintiffs' revocation of authority on July 17, 2025.

55. As a result of Investor Nest and Curiel's breaches, Plaintiffs suffered damages including loss of prospective sale proceeds, loss of ability to sell or refinance the Property, and ongoing harm from the title cloud.

**COUNT FIVE: Tortious Interference with Prospective Business Relations — Against Investor Nest and Curiel**

56. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

57. At the time Investor Nest recorded the Notice of Interest in February 2025, Plaintiffs had a reasonable probability of entering into business relations with other prospective purchasers of the Property at or above fair market value.

58. Investor Nest and Curiel independently tortiously interfered with those prospective business relations by recording the Notice of Interest for the coercive purpose of eliminating all competing buyers, as Curiel explicitly stated in text messages on February 11-12, 2025.

59. Curiel's own text messages — stating that Plaintiffs' title was clouded and could not be sold to anyone else but Investor Nest, and that the cloud would be maintained to prevent any other buyer — constitute direct evidence of tortious intent.

60. As a result of Investor Nest and Curiel's interference, Plaintiffs were prevented from selling the Property to other buyers at fair market value, sustained loss of approximately $40,000-$45,000 in forced price reduction demands, and suffered ongoing title damage. Plaintiffs are entitled to actual damages, consequential damages, and exemplary damages based on Curiel's intentional and malicious conduct.

**COUNT SIX: Wrongful Lien — Texas Property Code § 12.002 — Against Investor Nest and Curiel**

61. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

62. Texas Property Code § 12.002 provides that a person may not make, present, or use a document with knowledge that it is a fraudulent court record or fraudulent lien or claim against real property with the intent to cause another person to suffer financial injury.

63. Investor Nest and Curiel made, presented, and used the Notice of Interest with knowledge that it was being used beyond its legitimate contractual purpose and with intent to cause Plaintiffs to suffer financial injury through coerced price reduction and prevention of competing sales. The Notice of Interest, as used by Curiel, constitutes a fraudulent lien within the meaning of § 12.002.

64. Plaintiffs are entitled to the greater of $10,000 or actual damages, court costs, reasonable attorney's fees, and exemplary damages pursuant to Tex. Prop. Code § 12.002(b).

**COUNT SEVEN: Quiet Title and Cancellation of Notice of Interest — Against Investor Nest and Curiel**

65. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

66. Plaintiffs are the owners of the Property located at 210 W. Avenue F, Jarrell, Texas 76537, Parcel No. R012340, legally described as S3857 — Jarrell Town Of, Block 39, Lot 1-12, Acres 0.96.

67. The Notice of Interest recorded by Investor Nest on February 11, 2025 constitutes a cloud on Plaintiffs' title. All authority granted to Investor Nest in the Purchase Contract was revoked by

Plaintiffs on July 17, 2025. The Notice of Interest has no continuing legal basis and should be canceled and removed from the public record.

68. Plaintiffs are entitled to a judgment quieting title to the Property in their favor, canceling and expunging the Notice of Interest from the Williamson County property records, and declaring that Investor Nest and Curiel have no interest in the Property.

**COUNT EIGHT: Slander of Title — Against Investor Nest and Curiel**

69. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

70. Investor Nest and Curiel published false statements disparaging Plaintiffs' title to the Property by recording the Notice of Interest and by maintaining it of record after revocation of all authority on July 17, 2025. The statements were false in that Investor Nest had no continuing valid interest in the Property after revocation.

71. The false statements were made with malice, as demonstrated by Curiel's explicit statements that the title cloud was maintained intentionally to prevent any other sale.

72. As a direct result, Plaintiffs suffered pecuniary loss including inability to sell or refinance the Property, loss of prospective sale proceeds, and the cost of this litigation to remove the cloud. Plaintiffs are entitled to actual damages and exemplary damages.

**COUNT NINE: Civil Conspiracy — Against All Defendants**

73. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

74. Plaintiffs allege that AmeriHome, ServiceMac, Investor Nest, and Curiel engaged in a civil conspiracy, or alternatively acted in concert in a manner that had the combined effect of a coordinated scheme, to strip equity from Plaintiffs' Property through: (a) mortgage servicing misconduct that created financial vulnerability; combined with (b) predatory below-market acquisition through coercive title clouding during the period of financial distress.

75. The combination of AmeriHome's modification at an above-market interest rate, simultaneous foreclosure pressure, and Investor Nest's appearance with a below-market offer and immediate title clouding, all occurring while Plaintiffs were in financial distress, supports the inference of a common scheme.

76. Each defendant committed overt acts in furtherance of the scheme as described in the factual allegations above. Plaintiffs are entitled to joint and several liability against all co-conspirators for the full amount of damages caused by the scheme.

**COUNT TEN: Alter Ego / Veil Piercing — Against Nathaniel Curiel Individually**

77. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

78. Nathaniel Curiel used Investor Nest Properties, LLC as his personal instrument to threaten, coerce, and harm Plaintiffs. All threatening communications were made by Curiel personally. All decisions to record the Notice of Interest, demand price reductions through title cloud threats, and refuse to release the cloud after revocation were made by Curiel personally.

79. On information and belief, Investor Nest Properties, LLC was at all relevant times inadequately capitalized, its corporate formalities were not observed, there was no meaningful separation between Curiel and the entity, and the corporate form was used to perpetrate a fraud on Plaintiffs. Recognizing the separate existence of Investor Nest under these circumstances would sanction fraud and injustice.

80. Curiel is personally liable for all acts of Investor Nest Properties, LLC as its alter ego.

**COUNT ELEVEN: Declaratory Relief and Permanent Injunction — Against All Defendants**

81. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

82. An actual controversy exists between Plaintiffs and Defendants regarding: (a) the validity and enforceability of the loan modification agreement; (b) the right of AmeriHome and ServiceMac to assess foreclosure-related charges and pursue foreclosure remedies without compliance with Section 22 notice requirements; (c) the validity of the Notice of Interest and any continuing interest of Investor Nest or Curiel in the Property; and (d) the obligations of each defendant with respect to Plaintiffs' Property.

83. Plaintiffs seek a declaratory judgment: (a) that AmeriHome and ServiceMac may not pursue foreclosure without strict compliance with Section 22 of the deed of trust; (b) that the Notice of Interest recorded by Investor Nest is void and of no legal effect; (c) that Investor Nest and Curiel

have no interest in the Property; and (d) that Plaintiffs are the lawful owners of the Property free and clear of any cloud created by the conduct alleged herein.

84. Plaintiffs further seek a permanent injunction enjoining AmeriHome and ServiceMac from initiating or pursuing any foreclosure proceeding without strict compliance with all applicable notice requirements and RESPA/Regulation X obligations, and enjoining Investor Nest and Curiel from taking any further action to cloud, encumber, or interfere with Plaintiffs' title to the Property.

## V. DAMAGES

85. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages including:

(a) Improper fees and charges capitalized into Plaintiffs' principal loan balance;

(b) Loss of equity resulting from the forced price reduction demanded by Investor Nest and Curiel, estimated at $40,000-$45,000;

(c) Loss of the ability to sell or refinance the Property at fair market value due to the ongoing title cloud;

(d) Increased interest rate costs over the life of the loan resulting from the modification from 4.625% to 7.25%;

(e) Costs and expenses of litigation, including filing fees, PACER fees, certified mail costs, and related expenses;

(f) Emotional distress, mental anguish, and loss of enjoyment of property;

(g) Statutory damages under RESPA up to $2,000 per violation;

(h) Statutory damages under Texas Property Code § 12.002 of $10,000 or actual

damages, whichever is greater;

(i) Exemplary damages based on the intentional and malicious nature of Investor Nest

and Curiel's conduct;

(j) Reasonable attorney's fees and costs to the extent permitted by applicable law.


## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Katie Voss and Jamie Voss respectfully pray that this Court:


1. Award Plaintiffs actual damages against all Defendants in amounts to be determined at

trial;

2. Award Plaintiffs statutory damages under RESPA, 12 U.S.C. § 2605(f), against

AmeriHome and ServiceMac;

3. Award Plaintiffs statutory damages under Texas Property Code § 12.002(b) against

Investor Nest and Curiel;

4. Award Plaintiffs exemplary damages against Investor Nest and Curiel for intentional

and malicious conduct;

5. Enter a judgment quieting title to the Property in Plaintiffs' favor and canceling and expunging the Notice of Interest recorded February 11, 2025 from the Williamson County property records;

6. Enter a declaratory judgment as set forth in Count Eleven above;

7. Enter a permanent injunction as set forth in Count Eleven above;

8. Award Plaintiffs reasonable attorney's fees and costs to the extent permitted by applicable law;

9. Award Plaintiffs pre-judgment and post-judgment interest at the maximum rate permitted by law;

10. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

/s/ *Katie Voss*

Katie Voss, Plaintiff Pro Se
PO Box 272
Kempner, Texas 76539
(512) 635-5747
kvoss@vossandsonsconst.com



/s/ *Jamie Voss*

Jamie Voss, Plaintiff Pro Se

210 W. Avenue F

Jarrell, Texas 76537

(254) 383-9553


Dated: May 26, 2026


## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, a true and correct copy of the foregoing First Amended

Petition was served on the following counsel of record via the Court's CM/ECF electronic filing

system:


    Jacob Sparks — jacob.sparks@nelsonmullins.com

    Miranda C. Granchi — miranda.granchi@nelsonmullins.com

    Nelson Mullins Riley & Scarborough LLP

    Attorneys for Defendants AmeriHome Mortgage Company, LLC and ServiceMac, LLC


Jamie Voss was served by hand delivering documents.


/s/ *Katie Voss*

Katie Voss, Plaintiff Pro Se

(512) 635-5747

kvoss@vossandsonsconst.com